[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION DEFENDANT'S MOTION FOR MODIFICATION OF PARENTING PLAN (#198)
The court, after hearing, issued a decision on May 5, 1998 in reference to a post-dissolution motion for custody and visitation. It concerned the two minor children of the parties. They are Hannah Christie, born September 12, 1991, and Samuel Dickson, born November 19, 1993. The judgment awarded joint legal custody to the parties, with the plaintiff having physical custody. The judgment also set forth a parenting plan.
The defendant filed the present motion requesting a modification of the parenting plan. The court conducted hearings on this motion at the same time it entertained the plaintiff's motion to modify custody (#189) on July 5, July 6, July 11, July 12 and July 13, 2001. The parties were represented by counsel, and an attorney represented the children's interests. A guardian ad litem for the children testified, as well as other witnesses presented by the parties.
The evidence presented indicates that material changes of circumstance have occurred since the judgment of May 5, 1998, and that the present parenting plan should be changed. The defendant has remarried, the children are older and the existing plan has not succeeded because of the failure of the parties to cooperate. Also on this date, the Court, (motion #189), awarded sole legal and physical custody of both children to the plaintiff'.
The motion to modify the parenting plan is granted.
The following orders may enter:
The defendant shall have visitation in accordance with the following schedule:
I. Regular School Access Schedule effective on September 1st each year.
A. School Weeks
 1. On the 1st, 3rd, and 5th weekends of each month (when a month contains a 5th weekend) the defendant shall have the children in his care and custody from after school on Thursday until the commencement of school on Monday morning. The defendant shall pick up the children at school. If there is no school on Thursday, the defendant shall pick up CT Page 9207 the children at their mother's home by 3 p.m. If there is no school on Monday, then the defendant shall return the children to school on Tuesday or to the plaintiff's home by 9 a.m. on Tuesday.
2. On the second and fourth week of each month, the children shall be in the care of the defendant on Thursday from after school until Friday morning. The defendant may pick up the children at school on Thursday and return them to school on Friday morning. If there is no school on Friday, the children should be delivered to the plaintiff's home by 3 p.m. on Friday. If there is no school on Thursday, the defendant may pick up the children from the plaintiff's home by noon, on Thursday; provided, however, the provisions for national holidays hereinafter recited shall take precedence over the usual Thursday visit.
B. Holidays
 1. The parties shall alternate having the children with them for the Easter holiday, which is herein defined as commencing after school on Holy Thursday to the Monday morning following Easter. The defendant shall have the Easter holiday with the children in even-numbered years, and he shall pick them up at school on Holy Thursday, and he shall keep them until the Monday morning following Easter Sunday. He shall drop them off at school, or if there is no school, then at the plaintiff's home by 3 p.m. The plaintiff shall have the Easter holiday in odd-numbered years.
2. The parties shall alternate the Thanksgiving holiday each year. The parent who has Thanksgiving in a given year shall pick up the children at school on Wednesday and shall have them until the Monday following Thanksgiving, at which time the children shall be dropped off at school or at the plaintiff's home by 8:30 a.m. The defendant shall have Thanksgiving in the odd-numbered years. The plaintiff shall have Thanksgiving in the even-numbered years. In even-numbered years, the defendant shall have the children on the Tuesday before Thanksgiving, this visitation will commence with his picking them up after school and will end on Wednesday morning when he shall take them to school.
3. In odd-numbered years, the plaintiff shall have the children with her from Christmas Day at noon until January 2nd, at which time the regular schedule resumes, and the defendant shall have the children with him from after school on the last day of school before the holiday vacation until Christmas Day at noon. In even-numbered years, the defendant shall have the children with him from Christmas Day at noon until the day prior to school commencing in January, at which time the regular schedule resumes, and the plaintiff shall have the children with her from after school on the last day of school before the holiday vacation until Christmas Day at noon. The parent having the children CT Page 9208 before Christmas Day shall pick them up from school and deliver them to the other parent's home on Christmas Day. In even-numbered years the defendant shall deliver the children to the plaintiff's home on the day prior to school commencing in January by 5 p.m.
4. The children shall spend Mother's Day with the plaintiff. If it occurs on a weekend the children spend with their father, the defendant shall drop them off at the plaintiff's residence by 9:30 a.m. on Sunday and they shall remain with the plaintiff overnight.
5. The children shall spend Father's Day with the defendant. If it occurs on a weekend the children spend with their mother, the plaintiff shall drop them off at the defendant's residence by 9:30 a.m. on Sunday. and they shall remain with the defendant overnight.
C. Vacations
The winter and spring school vacations shall be alternated each year with the plaintiff having the February or winter vacation in odd-numbered years and the April or spring vacation in even-numbered years. In the event there is only one school vacation, the defendant shall have said vacation in odd-numbered years, and the plaintiff shall have said vacation in even-numbered years. "School vacation" shall be defined as the period from Monday through Friday of the week school is in recess. The regular weekend visitation schedules shall remain in effect during this time.
II. School Recess (Summer Time)
 A. This portion of the parenting plan is effective in 2002 and thereafter.
1. The plaintiff shall have the children from the last day of school through July 4th.
2. The defendant shall pick up the children from the plaintiff's residence on July 5th at 9 a.m. and keep them in his care and custody through August 8th. He shall return the children to the plaintiff's residence on August 9th at 9 a.m.
3. During the defendant's summer visitation period, the plaintiff shall see the children the Tuesday afternoons of the third, fourth and fifth weeks from 4:30 p.m. to 8:30 p.m. and on the weekend of the third week from Friday at 4:30 p.m. until Sunday at 8:30 p.m. The plaintiff shall pick up and deliver the children from and to the defendant's residence during her visitation days in July and August. CT Page 9209
4. The plaintiff shall have a vacation period with the children from August 9th through the end of the month. The plaintiff's first two weeks of vacation time shall be uninterrupted. On any remaining Thursdays during August, the defendant may visit with the children from 4:30 p.m. to 8:30 p.m. He shall pick up and return the children from and to the plaintiff's residence.
B. Each party shall provide the other with a schedule of organized summer activities as soon as the schedule is received by the parent, and the other parent shall be invited to attend such activities if it is an activity to which parents are normally invited.
C. The court recognizes that the summer visitation schedule accommodates the defendant's request and reflects the interest of the children in the activities made available by their father. This schedule could produce two unfair consequences unless there are concessions made by both parties.
i. This order leaves the children with their mother from the end of the school year through July 4th without any meaningful access by the defendant. Depending on the date summer recess begins, this could be a period of several days.
ii. The second result of this order is to restrict the plaintiff's time with the children to two disjointed periods, limiting both her plans with them or for them to enjoy activities selected by her.
The parties are strongly urged to accommodate each other's request to adjust this schedule in an equitable manner. If they are unable to do so, either party may seek the court's review of the summer schedule after completion of the summer of 2003, or sooner, if some extraordinary situation occurs.
The court has made a diligent effort to set a parenting plan that it believes to be in the best interest of the children. It has been greatly assisted by the efforts of the guardian ad litem, the children's counsel and the attorneys for the parties. However, it is difficult to anticipate how such a detailed schedule will work when it leaves the drawing board. Therefore, after a reasonable period of implementation, if the parties are unable to make the necessary adjustments, either party may request the court to refine, clarify, adjust or change any part of the plan thatin practice causes an unanticipated problem. This offer is not aninvitation to rewrite these orders but only to fine tune them.
III. Miscellaneous Orders
CT Page 9210
1. The holiday, vacation and summer visitation schedules as outlined herein shall supercede the regular school access schedule.
2. Neither party shall himself or herself schedule any activity for either child at a time when the child is scheduled to be with the other parent. Neither parent shall permit the children to schedule activities on days or at times when the children are scheduled to be with the other parent unless the parent who has access to the children at such time has previously agreed. Discussion of scheduling children's activities shall take place between the parties only.
3. Both parents shall be permitted to attend school and extra curricular activities for the minor children if it is such an activity to which parents are normally invited to attend. In the event there are in class events where parents are involved directly in activities with the children. such activities shall be alternated by the parents. In the event a parent is not able to attend such an activity, the other parent shall be given the opportunity to attend the activity.
4. If, during the school year. the children participate in team sports activities as part of a regular school or town program, each parent shall take the children to and from said activity when the children are in his or her care.
5. Both parents shall have access to the minor children by phone when the children are with the other parent. In the event the parent has not spoken with the children previously during the day, the children shall be permitted to speak with the other parent between 7 and 8 p.m. daily. When the children spend an overnight with a parent away from that parent's permanent residence, that parent shall provide the other parent with the phone number and address of the children.
6. Each parent shall be provided with a travel itinerary, phone number and contact information in the event of an emergency.
7. If a child is deemed by the plaintiff to be ill and unable to visit with the defendant during his scheduled time with the child, the parties shall arrange for make up time as soon as the child's schedule permits.
8. If either party has knowledge of any illness or accident or other circumstance seriously affecting the health or welfare of the children, that party shall promptly notify the other.
9. The parties shall assure that the designations of "mother" and "father" and their equivalents are used by the children to apply only to CT Page 9211 the parties and are not to apply to any other person.
10. The parties shall exert every reasonable effort to maintain free access and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the parties. Neither party shall do anything which may estrange the children from the other party nor injure the opinions of the children as to the other parent, nor to act in such a way as to hamper the free and natural development of the children's love and respect for the other parent.
11. These orders supercede and replace all prior orders contained in Exhibit A, Custody Stipulation, incorporated by reference in the judgment of dissolution of the marriage of the parties on February 14, 1996 and the orders entered on May 6, 1998 concerning the post judgment motion for custody and visitation.
12. Based on the previous stipulation of the parties and consideration of their respective financial situations, the defendant shall pay the entire bill for services rendered by Louise Truax, attorney for the minor children. Payment shall be made by September 1, 2001.
13. In addressing the plaintiff's request for counsel fees and the responsibility for payment of the fees of the guardian ad litem, the court has considered the pertinent statutory criteria, including the financial affidavits of the parties.
A. As to the plaintiff's request for counsel fees, it is granted. The court has taken into consideration that the plaintiff has paid her counsel $12,000 on account. The defendant shall make a contribution of $42,000 to the plaintiff's counsel fees. Payment shall be made by September 1, 2001.
B. The plaintiff shall contribute to the fees of the guardian ad litem, Mark Katz, Esq., by direct payment to him the sum of $3,000. The defendant shall be responsible for the balance due. Payments shall be made by September 1, 2001.
Judgment may enter accordingly.
NOVACK, JUDGE TRIAL REFEREE